## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Cynthia Souza, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br>v. )<br><br>Deva Concepts, LLC, )<br><br>Defendant ) | Case No.:<br><br>CLASS ACTION COMPLAINT<br><br>(Jury Trial Demanded) |

Cynthia Souza ("Plaintiff") individually and on behalf of all others similarly situated, brings this action against Defendant Deva Concepts, LLC (herein "Defendant"). Plaintiff alleges the following based on information and belief, the investigation of counsel, and personal knowledge.

## INTRODUCTION

1.    This class action challenges the deceptive, misleading, unfair, and unlawful conduct of Defendant in connection with its active concealment of and failure to disclose the harmful side effects caused by DevaCurl hair care products which are designed, formulated, produced, marketed, and sold by Defendant. Defendant's products include the DevaCurl No-Poo Original, DevaCurl Low-Poo Original, DevaCurl Low-Poo Delight, DevaCurl No-Poo Decadence, DevaCurl One Condition Original, DevaCurl Light Defining Gel, DevaCurl Ultra Defining Gel, DevaCurl One Condition Delight,  Melt into Moisture Mask, Deep Sea Repair, Styling Cream, DevaCurl Leave-In Decadence, Super Stretch Coconut Curl Elongator, and Wavemaker.

2.    Defendant sold and marketed these products to consumers with curly, super curly, and wavy hair. Defendant advertises the products as safe, natural and free from harsh ingredients

and designed to moisturize, nourish and strengthen hair. However, complaints concerning product safety and efficacy have been common and hard to ignore. Rather than strengthening hair and moisturizing the curls, DevaCurl Products have caused consumers to suffer hair loss, hair damage, balding, and scalp injury.

3.      Defendant failed to warn consumers that normal use of its products can cause hair loss, hair damage, balding, and scalp injury. Instead of disclosing the risk of hair loss, hair damage, balding, scalp injury and other damage associated with its products, Defendant conceals these risks and shifts the blame to "a number of reasons including giving birth, stress, scalp buildup, dandruff, losing weight, certain illnesses, and more."[1] Defendant goes a step further and normalizes excessive hair loss by stating that "it is normal to lose up to 100 hairs per day."[2]

4.      Even when faced with a multitude of consumers complaining about adverse side effects with normal use of its products, Defendant continued to market its products as safe and containing only "natural and functional ingredients."[3]

5.      Relying on these omissions and misrepresentations, Plaintiff purchased the DevaCurl products. After exclusively using DevaCurl products, Plaintiff began experiencing hair loss, hair damage, scalp injury, or a combination of these harms.

6.      Defendant's active concealment and material omissions induced the purchase of DevaCurl hair care products because no reasonable consumer would have likely purchased the products, let alone paid a premium for them, had they known it could result in such harm. Every consumer who purchased Defendant's defective products without the facts concerning the risks

---

[1] *See*, https://www.devacurl.com/blog/hair-shedding-101/ (last visited Feb. 12, 2020).
[2] *Id*.
[3] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary (last visited Feb. 27, 2020).

and side effects having been disclosed prior to purchase were injured equally at the point of sale when, instead of obtaining premium safe, and natural hair care products they thought they were getting, they obtained Defendant's dangerous and defective product. Had the potential impacts of the defective hair care products designed and sold by Defendant been disclosed to reasonable consumers, they would have not paid the hefty premium charged for these products, or more likely, would not have purchased them at all.

7.      Now, Plaintiff brings the instant action on behalf of herself and all others similarly situated, seeking damages incurred for Defendant's deceptive conduct.

## PARTIES

8.      Plaintiff Cynthia Souza is a resident of New York, New York who purchased and exclusively used DevaCurl products. Plaintiff Souza experienced severe scalp irritation, scalp bleed, and dandruff.

9.      Defendant Deva Concepts, LLC is incorporated in Delaware with its principal place of business at 560 Broadway, Suite 206, New York, NY 10012.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d)(2), because at least one class member is of diverse citizenship from Defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.      This Court has personal jurisdiction over Defendant because it's principle place of business is within this District, it transacts business in this District, has substantial aggregate contacts within this District, and it purposefully availed itself of the laws of this District.

12.     Venue is proper in this District pursuant 28 U.S.C §1391 because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant's principle place of business is located in this District  This Court accordingly has jurisdiction over this action and venue proper is this District.

## FACTUAL ALLEGATIONS

**DevaCurl Products**

13.     Defendant's DevaCurl products are formulated for consumers with curly, super curly, and wavy hair. The DevaCurl hair care brand offers a range of products such as: cleansers, conditioners, treatments, stylers, and hair tools.[4]

14.     In 2002, Defendant created and developed the "DevaCurl No-Poo Original" which is marketed as the "game-changing alternative to traditional shampoo." *See* https://www.devacurl.com/us/curl-101/our-story (last visited Feb. 9, 2020).

15.     Defendant's DevaCurl No-Poo Original is a "no-suds conditioning cleanser" that is a marketed as a gentle product to cleanse curls without stripping away the natural oils needed to keep the curls looking "healthy, bouncy, and simply gorgeous." *Id*.

16.     Since creating the DevaCurl No-Poo Original, Defendant has expanded its "moisturizing cleanser" line by adding the DevaCurl Low-Poo Original, Low-Poo Delight, and No-Poo Decadence (collectively referred to as the "conditioning cleansers").[5]

---

[4] In addition to hair care products, Defendant offers classes for those interested in specializing in curly hair care and becoming an expert in the company's products. The classes are offered at the DevaCurl Academy, online, and in the field by way of their one-day classes taught across the United States, including California.
[5]*See*, https://www.devacurl.com/us/products (last visited Feb. 12, 2020).

17.    Defendant's conditioning cleansers individually cost $46.[6] However, they are regularly sold as part of a "kit" in conjunction with other DevaCurl products as part of an overall hair system. Defendant prices the kits at $92. *Id.*

18.    Consumers pay premium prices for Defendant's conditioning cleansers along with their products based on Defendant's representations. For example, Defendant states that its products "will not only enhance your curls, but also enhance your life."[7]

19.    Defendant also states that the DevaCurl products are "rooted in curl science" and are "formulated with a moisture foundation that helps curls look and feel healthy, conditioned, soft, defined, shiny, and frizz-free."[8]

20.    Defendant assures consumers that their products are safe. According to Defendant, DevaCurl products go through "extensive product testing." The testing consists of products undergoing Defendant's "strict safety testing protocols" which includes testing "products on actual people, not mannequins or hair swatches."[9]

21.    Defendant regularly advertises all of its products as "free of harsh ingredients long before it was buzzworthy" because "it was the right thing to do for curls."[10] For example, Defendant promotes its products as containing only "natural and functional ingredients." Defendant claims that its products contain ingredients with a conscience and are "100% sulfate, silicone, paraben, phthalate, mineral oil, gluten and cruelty free."[11] Defendant bolsters these claims

---

[6]*See*, https://www.devacurl.com/us/products/cleansers/low-poo-original/v/29778540822610 (last visited Feb. 17, 2020).
[7]*See*, https://www.devacurl.com/us/curl-101/product-philosophy (last visited Feb. 27, 2020).
[8]*Id.*
[9] *Id.*
[10]*See*, https://www.devacurl.com/us/curl-101/product-philosophy (last visited Feb. 8, 2020).
[11]*Id.*

with photographs of natural ingredients such as chia-flaxseed extract, jojoba oil, saffron flower extract, and passionfruit oil.[12]

22.    However, the full list of ingredients in a bottle of DevaCurl No-Poo Original conditioning cleaner is not as simple as the advertising suggests, and includes:

> Water (Aqua, Eau), Cetyl Alcohol, Glycerin, Isopropyl Palmitate, Behentrimonium Chloride, Laureth-4, Propylene Glycol, Vitis Vinifera (Grape) Seed Oil, Mentha Piperita (Peppermint) Oil, Wheat Amino Acids, Melissa Officinalis Extract, Humulus Lupulus (Hops) Extract, Cymbopogon Schoenanthus Extract, Chamomilla Recutita (Matricaria) Flower Extract, Rosmarinus Officinalis (Rosemary) Leaf Extract, Achillea Millefolium Extract, Cocamidopropyl Betaine, Menthol, Citric Acid, Polyquaternium-7, Phenoxyethanol, Ethylhexylglycerin, Fragrance (Parfum).

*See*, https://www.devacurl.com/us/products/cleansers/no-poo-original/v/ 29767841742930 (last visited Feb. 13, 2020).

23.    Several of these ingredients are known allergens, irritants, or otherwise harmful to humans including Propylene Glycol and Cocamidopropyl Betaine. For example, in 2004, the American Dermatitis Society named Cocamidopropyl Betaine the allergen of the year.[13] In 2018, Propylene Glycol was named allergen of the year by the American Dermatitis Society. [14]

24.    Defendant not only failed to disclose the allergens contained in its "natural" products, but also failed to disclose the safety risks associated with ordinary use of its products. Specifically, the packaging and advertising of Defendant's DevaCurl products fails to warn consumers of the risk of hair loss, hair damage, excessive shedding, balding, and scalp injury.

25.    Defendant engaged in the above-described actionable statements, omissions, and concealments and knew or should have known that the representations were false and/or

---

[12] https://www.devacurl.com/us/curl-101/product-philosophy/ingredient-glossary (last visited Feb. 27, 2020).
[13] *See*, https://www.ncbi.nlm.nih.gov/pubmed/18627690 (last visited Feb. 17, 2020).
[14] *See*, https://www.ncbi.nlm.nih.gov/pubmed/29059092 (last visited Feb. 17, 2020).

misleading and likely to mislead reasonable consumers. Defendant had and has exclusive access to information pertaining to the defects in its hair care products that Plaintiff and Class members could not and did not have.

**Consumer Complaints of DevaCurl Products**

26.     The effects of Defendant's DevaCurl defective hair care products are far from strengthening hair and reducing breakage.

27.     For example, on August 8, 2019, a consumer stated on the Better Business Bureau website, "I have been using Deva curl products for off and on 2 years…. My scalp has been increasingly itchy, hair shedding abnormally, thinning ends." Aside from the money spent on DevaCurl products, the consumer says the biggest concern is "the disaster these products have caused [her] scalp and hair." *See*, https://www.bbb.org/us/ny/new-york/profile/hair-salon/devachan-0121-100132/complaints#344066087 (last visited Feb. 9, 2020).

28.     On November 8, 2019, a consumer reported on Trustpilot.com that she was experiencing "horrible itchy scalp and major hair loss after using these products for over three years. My Deva Curl hairdresser is fantastic but these products are absolutely horrible! Just think I gave these to my young daughter for her curls, she also experienced major hair loss and itchy scalp. Deva Curl, I hope you acknowledge my email and refund me asap for this disaster!" *See*, https://www.trustpilot.com/review/devacurl.com (last visited Feb. 9, 2020).

29.     Numerous customers have posted product reviews on Sephora reporting thinning hair, hair loss, itchy scalp, and dandruff. For example, one consumer wrote, "I started noticing my hair thinning, which was distributing because I have always had extremely thick hair. Finally, I couldn't ignore it anymore this year when I could see through to my scalp, and I looked balding

when my hair was wet." See, https://community.sephora.com/t5/Best-Hair-Ever/DevaCurl-Issues/td-p/2411473/page/2 (last visited Feb. 9, 2020).

30.     In December 2019, a group of consumers formed a Facebook group called "Hair Damage & Hair Loss from DevaCurl- You're not Crazy or Alone!" The thousands of members have shared their hair loss, excessive shedding, hair damage, hair balding, and scalp irritation after using DevaCurl hair care products. The group currently has over 42,000 members as of filing this Complaint.

31.     DevaCurl ambassador, Ayesha Malik, a social media influencer once hired by DevaCurl, posted a video on her YouTube channel titled "Why I Stopped Using DevaCurl" on January 31, 2020. *See* https://www.youtube.com/watch?v=nuo8UCcyDhg (last visited Fed. 14, 2020). In 2018, Malik says she started to notice a change in her hair. After following the same hair care routine for six years—consisting of exclusive use of DevaCurl products and tools—Malik says she went an entire year of "bad hair days." Her bad hair days included: itchy scalp, dandruff, severe hair damage, and hair loss. Malik says, "I don't know what else to do except for literally shave my whole head."   After recommending viewers to stop using these products, she says, "These products are really expensive so when you pay the money for them, you expect high quality and that's why I feel like I've been lied to."

32.     YouTube is replete with video journals like Malik's. *See, e.g.*, Stephanie Mero aka "The Curl Ninja," Dec. 24, 2019 (https://www.youtube.com/watch?v=YIeCytk_CUg) (after suffering from hair loss and damage with DevaCurl use Mero shares "how [she] went from being a DevaCurl stylist to a victim"); Sydney Dragon, Feb. 1, 2020 (https://www.youtube.com/watch?v=D9kFPy2qMMc) (she describes experiencing an itchy scalp, hair damage, and dandruff); Kamrin White, Feb. 8, 2020

(https://www.youtube.com/watch?v=gVIH-TIDPHc) ("DevaCurl ruined my hair and almost cost me my job") (last visited Feb. 13, 2020); Karen Mcllarth, Feb. 9, 2020 (https://www.youtube.com/watch?v=fjgwY0RQqfU) ("my hair was just really dry…and I was losing a lot of hair").

33.    Despite ample notice and knowledge of the problems caused by DevaCurl products, Defendant has not recalled any of the products, has not provided any warnings of the known risks, and has not offered consumers any compensation for their damages.

34.    Had Plaintiff and the Class been aware of this information prior to purchasing the defective hair care products, they would not have purchased them. At a minimum, Plaintiff and the Class would have been able to make informed purchasing decisions had they known the true risk of injury and hair loss inherent in Defendant's DevaCurl hair care products.

**ALLEGATIONS PERTAINING TO PLAINTIFF**

35.    Plaintiff Cynthia Souza ("Souza") began purchasing Defendant's DevaCurl products in early 2014 at local beauty salons in Brazil. In 2016, Plaintiff Souza relocated to the United States and began purchasing Defendant's products at Bed Bath & Beyond, Sephora, Target, and in local beauty salons. Plaintiff Souza purchased the DevaCurl products based on the representations on the packaging and labeling of the product, as well as Defendant's online marketing statements. Based on these labeling practices as described above, Plaintiff Souza believed the products contained only natural ingredients that were neither harsh on nor unsafe for her hair and scalp.

36.    After learning about Defendant's products from social media, Plaintiff Souza began using DevaCurl No-Poo Original, No-Poo Decadence, One Condition Original, Leave-In Decadence, Heaven In Hair, Melt Into Moisture Mask, Deep Sea Repair, Ultra Defining Gel, and

Arc AnGel. Plaintiff Souza exclusively used Defendant's products and experienced scalp irritation, scalp bleed, and dandruff. Plaintiff Souza discontinued using Defendant's DevaCurl products.

## CLASS ACTION ALLEGATIONS

37.     Pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of herself and as the "Class" defined as:

> Nationwide Class: All persons who, within the Class Period, purchased one or more hair care products sold by Defendant in the United States. The "Class Period" for the Class dates back to the length of the longest applicable statute of limitations for any claims asserted on behalf of that Class from the date this action was commenced and continues through the present and the date of judgment.

38.     Additionally, Plaintiff brings this action on behalf of herself and members of the following Subclass:

> Consumer Fraud Multi-State Class: All persons who, within the Class Period, purchased hair care products manufactured by Defendant in states whose statutory consumer protection laws are the same (the "Consumer Fraud Multi-State Class").

39.     Plaintiff reserves the right to amend the definition of the Class and Class Period if discovery or further investigation reveals that the Class should be expanded or otherwise modified. All requirements for class certification in Fed. R. Civ. P. 23(a) and 23(b)(3) are satisfied with respect to the Class. Class certification under Fed. R. Civ. P. 23(b)(1) or 23(b)(2) is also proper.

40.     **Numerosity**: Plaintiff does not know the exact size or identities of the proposed Class, however, the Class encompasses millions of individuals who are dispersed geographically throughout the United States. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

41.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members

of the Class. Plaintiff suffered damage as a result of the defective hair care products and individual questions are minimal. The common questions of law and fact include, but are not limited to:

     a.    Whether Defendant's hair care products were defective;

     b.    Whether Defendant's hair care products have the propensity to cause injury when used as directed;

     c.    Whether Defendant had knowledge or should have known of the defect in its hair care products;

     d.    Whether Defendant concealed the defect in its hair care products;

     e.    Whether the defect was a material fact which Defendant had a duty to disclose to Plaintiff and the Class;

     f.    Whether Plaintiff and the Class suffered damage from Defendant's defective hair care products;

     g.    Whether Defendant breached the implied warranty of merchantability or other warranties related to its defective hair care products;

     h.    Whether Plaintiff and the Class are entitled to damages, restitution, restitutionary disgorgement, equitable relief, or other relief; and

     i.    The amount and nature of such relief to be awarded to Plaintiff and the Class.

42.    **Typicality**: Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and the members of the Class purchased Defendant's defective hair care products with the same expectation that the products were defect-free and safe to use for their intended purpose.

Plaintiff and members of the Class have all sustained injury in that they lost the benefit of their bargain and at the very least overpaid for a product that contains the defects described above.

43.     **Adequacy:** Plaintiff and the undersigned counsel will fairly and adequately protect the interests of members of the Class. Plaintiff has no interests that are adverse to the interests of the other members of the Class and have hired counsel experienced in class actions, complex litigation, and trial practice.

44.     **Superiority:** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the Class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost and burden on the court system of adjudication of individualized litigation would be substantial, and significantly more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

45.     **Predominance/Community of Interest.** The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated. The common questions of law and fact predominate with respect to the liability issues, relief issues, and anticipated affirmative defenses. The named Plaintiff has claims typical of the Class. Without limitation, as a result of Defendant's conduct alleged herein, Plaintiff was: (a) injured; and (b) sustained pecuniary loss in an ascertainable amount to be proven at the time of trial.

**COUNT I**
**Violation of the New York Deceptive Trade Practices Act**
**New York Gen. Bus. Law § 349, *et seq*.**

46.     Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

47.     The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce." N.Y. Gen. Bus. Law § 349.

48.     Defendant's deceptive acts and practices:

        a.      Knowingly designing, developing, manufacturing, advertising, and selling, Defendant's products with false health claims and significant defects that result in health and safety risks when used so that consumers did not receive the benefit of their bargain;

        b.      Marketing and selling Defendant's products that relied upon false health claims, while at the same time exposing consumers to health and safety risks solely to increase profits;

        c.      Making affirmative public representations about the alleged benefits of Defendant's products while, at the same time, not ensuring consumer health and safety with respect to use of the products; and

        d.      Concealing material information from consumers regarding the true nature of the defects in Defendant's products in order to impact customer purchasing behavior.

49.     Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Defendant's products.

50.    As alleged more fully herein, Defendant's marketing and sale of Defendant's products, and more specifically its failure to inform consumers of the health and safety risks inherent in Defendant's products, violated N.Y. Gen. Bus. Law § 349, common law, and other statutory violations as alleged herein. Plaintiff reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the products abilities and continues to deny that the products pose health and safety risks, Defendant has not recalled its products nor provided any remedial efforts including a warning disclosing their possible risks, and Defendant's conduct is ongoing and continues to this date.

51.    Defendant violated N.Y. Gen. Bus. Law § 349's prohibition against unfair conduct by failing to inform its customers about Defendant's products abilities and their potential health and safety risks; engaging in a pattern or practice of concealing those facts and continuing to sell those Defendant's products despite its knowledge that they are misrepresented and carry health and safety risks (including the risks of hair damage, hair loss, excessive shedding, and scalp injury) thereby depriving customers of the value of Defendant's products as represented. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous as the gravity of conduct outweighs any alleged benefit. Specifically, the health and safety risks were outweighed by Defendant's profit motive. Defendant engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers with full information about Defendant's products, including the known risks and potential side effects of use, prior to purchase).

52.    Defendant engaged in this conduct to gain unfair commercial advantage over its competitors, seeking to avoid public knowledge of the abilities of Defendant's products and their

defects to avoid damage to their sales or reputation. Defendant withheld critical and material information from Plaintiff and the Class, competitors, and the marketplace, all to Defendant's unfair competitive advantage.

53.    Defendant's business practices, as alleged herein, constitute fraudulent conduct because they were willing to deceive, and did deceive Plaintiff and the Class into purchasing Defendant's products when those products were misrepresented and defective with health and safety risks and otherwise did not perform as advertised.

54.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

55.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and the Class were injured and lost money or property, including not receiving the benefit of their bargain in purchasing Defendant's products, and increased time and expense in dealing with treating damages from the use of Defendant's products.

56.    Defendant recklessly disregarded Plaintiff and the Class members' rights. Defendant's knowledge of the products' false claims and health and safety risks put it on notice that the Defendant's products were not as it advertised.

57.    Plaintiff and the Class seek an order enjoining Defendant's unfair and deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New York Deceptive Acts and Practices Acts.

**COUNT II**
**Violation of the New York False Advertising Act**
**New York Gen. Bus. Law § 350, *et seq*.**

58.    Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

59.     The New York False Advertising Act makes unlawful "false advertising in the conduct of any business, trade, or commerce." N.Y. Gen. Bus. Law § 350. False advertising includes "advertising, including label, of a commodity…if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of…representations [made] with respect to the commodity…."

60.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose the true nature of Defendant's products. Defendant failed to instigate a public information campaign to alert consumers of the defects and, instead, continued to misrepresent the true nature of Defendant's products, continuing to deceive consumers.

61.     Defendant continued to misrepresent to consumers that Defendant's products were capable of certain benefits without disclosing health and safety risks. Had Defendant disclosed those issues, rather than falsely advertising Defendant's products abilities, consumers would not have purchased Defendant's products, and would not pay an inflated price for Defendant's products.

62.     In making and disseminating the statements alleged herein, Defendant knew, or should have known, its representations, advertisements, and statements were untrue and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq*. Plaintiff and the Class based their purchasing decisions on Defendant's omitted material facts. The revenues to Defendant attributes to products sold in those false and misleading advertisements amount to hundreds of millions of dollars. Plaintiff and the Class were injured in fact and lost money and property and sustained injuries as a result.

63.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq*.

64.     As a result of Defendant's wrongful conduct, Plaintiff and the Class members lost money and sustained personal injuries. Plaintiff and the Class are therefore entitled to restitution as appropriate for this cause of action.

65.     Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiff and the Class members seek injunctive relief, as well as monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, and (b) statutory damages in the amount of $500 each member of the Class.

## COUNT III
## Breach of Implied Warranty

66.     Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

67.     At all times relevant herein, Defendant was a merchant with respect to the defective hair care products as described in this Complaint. The defective hair care products sold to Plaintiff and members of the Class are goods as defined by relevant statutes.

68.     Defendant's hair care products include an implied warranty that they are merchantable in that they are, *inter alia*, fit for the ordinary purpose for which such goods are used.

69.     The defective hair care products at issue in this case are not in merchantable condition or fit for the ordinary purpose for which such goods are used in that rather than cleaning and conditioning hair and styling hair, they cause skin irritation, injury, and hair loss, among other damage.

70. At all times relevant herein, Defendant was aware of the defect in the defective hair care products. Specifically, Defendant and its agents were on notice of the problems and provided an opportunity to cure the defect due to the plethora of complaints received.

71. Plaintiff and members of the Class were in direct privity with Defendant and its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

72. Plaintiff and the Class were harmed by Defendant's omissions and misrepresentations when they purchased the defective hair care products.

73. Had Defendant disclosed the true nature of the defect in its hair care products, Plaintiff and members of the Class would not have purchased DevaCurl hair care products.

74. Plaintiff and members of the Class have suffered a loss by paying more than they would have otherwise paid for the defective hair care products and by receiving hair care products of inferior value than what they were promised by Defendant.

75. As a direct and proximate result of Defendant's breaches, Plaintiff and members of the Class have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

76. Plaintiff and members of the Class are entitled to legal and equitable relief against Defendant, including actual and consequential damages, attorneys' fees, costs of suit, and other relief as deemed appropriate.

## COUNT IV
## Breach of Express Warranty

77. Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

78.     As described herein, Defendant placed labels on its defective hair care products, and on its website, with the intention that consumers would rely on those misrepresentations and purchase the product from Defendant.

79.     At all times relevant herein, Defendant were aware, or with the exercise of reasonable care should have been aware, of the defect in the defective hair care products. Specifically, Defendant and its agents were on notice of the problems and were provided an opportunity to cure due to the plethora of complaints received.

80.     Defendant's false and misleading statements related to quality and safety became a basis of the bargain, and Plaintiff and members of the Class expected that the DevaCurl hair care products that they purchased would conform to Defendant's affirmations.

81.     Plaintiff and members of the Class were in direct privity with Defendant and its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

82.     Plaintiff and the Class were harmed by Defendant's omissions and misrepresentations when they purchased the defective hair care products.

83.     Had Defendant disclosed the true nature of the defect in its hair care products, Plaintiff and members of the Class would not have purchased the defective hair care products.

84.     Plaintiff and members of the Class have suffered a loss by paying more than they would have otherwise paid for the defective hair care products and by receiving hair care products of inferior value than what they were promised by Defendant.

85.     As a direct and proximate result of Defendant's breaches, Plaintiff and members of the Class have suffered, and will continue to suffer, significant damages, loss, and injury in an amount to be determined at trial.

86.     Plaintiff and members of the Class are entitled to legal and equitable relief against Defendant, including actual and consequential damages, attorneys' fees, costs of suit, and other relief as deemed appropriate.

**COUNT V**
**Unjust Enrichment**

87.     Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

88.      Plaintiff brings this claim on behalf of the Class as an alternative to the claim for breach of warranty (Counts V).

89.     As alleged above, Defendant's unlawful, unfair, deceptive, and wrongful acts and omissions, unjustly enriched Defendant at the expense of Plaintiff and the Class. Plaintiff and the Class paid a premium for hair care products which were unfit for their ordinary use and were of inferior quality.

90.     Plaintiff and Class members conferred a benefit on Defendant through payment for the defective hair care products.

91.     Defendant's retention of the benefit conferred as a result of its unlawful acts is inequitable and unjust.

92.     Plaintiff and members of the Class have no adequate remedy at law.

93.     Plaintiff and members of the Class are entitled to seek restitution and other relief from Defendant, including an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by Defendant through and for its wrongful conduct.

## COUNT VI
## Negligence–Failure to Warn

94.     Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

95.     Defendant was responsible for designing, formulating, testing, manufacturing, inspecting, distributing, marketing, supplying and selling DevaCurl products to Plaintiff and the Class.

96.     The use of Defendant's products in a manner that was intended or reasonably foreseeable by Defendant, involved substantial risk of hair loss, hair damage, balding, and scalp injury.

97.     The risk of substantial hair loss, hair damage, balding and scalp injury was known or knowable to Defendant, in light of the generally recognized and prevailing knowledge available at the time of manufacture and design, as described herein.

98.     Defendant, as the developer, manufacturer, distributor, and seller of DevaCurl products, had a duty to warn Plaintiff and the Class of all dangers associated with the intended use of the DevaCurl products.

99.     Certainly, after receiving thousands of complaints of hair loss, hair damage, balding, and scalp injury from DevaCurl customers, a duty arose to provide a warning to consumers that use of the product involved a non-insubstantial risk of hair loss, damage, balding, and scalp injury.

100.    Defendant was negligent and breached their duty of care by negligently failing to give adequate warning to purchasers and users of DevaCurl products, including Plaintiff and the Class, about the risks, potential dangers and defective condition of the products.

101.    Defendant knew, or by the exercise of reasonable care, should have known of the inherent design defects and resulting dangers associated with using DevaCurl products as described herein, and knew that Plaintiff and Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing Plaintiff and the Class with adequate warnings.

102.    As a direct and proximate result of Defendant's failure to adequately warn consumers that use of DevaCurl products could cause hair loss, hair damage, balding, and scalp injury, Plaintiff and the Class suffered damages as set forth herein.

## COUNT VII
### Negligence –Failure to Test

103.    Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

104.    Defendant did not perform adequate testing on DevaCurl products which were defectively designed, formulated, tested, manufactured, inspected, distributed, marketed, supplied, and sold to Plaintiff and the Class.

105.    Adequate testing would have revealed the serious deficiencies in the DevaCurl products in that it would have revealed the substantial hair loss, hair damage, balding, and scalp irritation occasioned by use of the DevaCurl products.

106.    Defendant has, and continues to have, a duty to exercise reasonable care to properly design—including the duty to test—DevaCurl products before introducing them into the stream of commerce.

107.    Defendant breached these duties by failing to exercise the ordinary care in the design and testing of DevaCurl products, which they introduced into the stream of commerce,

because Defendant knew or should have known that the DevaCurl products could cause substantial hair loss, hair damage, balding and scalp irritation.

108.    Defendant knew or reasonably should have known that Plaintiff and Class members would suffer economic damages or injury and be at an increased risk of suffering damage and injury, as a result of its failure to exercise ordinary care in the design of DevaCurl products by failing to conduct appropriate testing.

109.    By reason of foregoing, Plaintiff and the Class experienced and are at risk of experiencing financial damage and injury.

110.    As a direct and proximate result of Defendant's failure to test DevaCurl products designed, formulated, manufactured, inspected, distributed, marketed, warranted, advertised, supplied by the Defendant, Plaintiff and the Class have suffered damages.

## COUNT VIII
## Strict Products Liability

111.    Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

112.    Defendant is the creator, developer, and manufacturer of the DevaCurl products.

113.    Defendant sells the DevaCurl products through its website and through other retailers such as Target, Amazon, Ulta Beauty, Walmart, and Sephora.

114.    As described herein, the DevaCurl products possessed a defect in manufacturing in that the formula can cause substantial hair loss, hair damage, balding and scalp injury.

115.    The defect in the DevaCurl products existed at the time the products left Defendant's possession and were introduced into the stream of commerce.

116.    The DevaCurl products caused harm and injury to Plaintiff and the Class in that, *inter alia*, it caused and causes hair loss, hair damage, balding and scalp injury.

117.    Plaintiff's use of the DevaCurl products occurred in a manner that was reasonably foreseeable to Defendant.

## COUNT IX
### Violations of the State Consumer Frauds Act
### (On behalf of the Consumer Fraud Multi-State Class)

118.    Plaintiff reasserts the allegations in the paragraphs above as though fully set forth at length herein.

119.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibits the use of the unfair or deceptive business practices in the conduct of trade or commerce.

120.    Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

121.    Defendant engaged in unfair and/or deceptive conduct as alleged herein.

122.    Defendant intended that Plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct as described above.

123.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

124.    In addition, Defendant's conduct showed malice, motive, and reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all other similarly situated individuals, demand judgment against Defendant as follows:

A.    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and 23(b)(1), or Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B.    Appointment of Plaintiff as class representatives and the undersigned as class counsel on behalf of the Class sought in this complaint;

C.    Awarding Plaintiff and members of the Class monetary damages including compensatory relief, punitive damages, and actual damages in an amount to be determined at trial;

D.    Appropriate preliminary and permanent injunctive and declaratory relief;

E.    Statutory damages and penalties as provided by law;

F.    Prejudgment continuing through the date of entry of judgment in this action;

G.    Costs and fees incurred in connection with this action, including attorneys' fees, expert witness fees, and other costs, as provided by law; and

H.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**IMBESI LAW GROUP P.C.**

Date: April 9, 2020

/s/ Brittany Weiner, Esq.
Brittany Weiner, Esq.
1501 Broadway, Suite 1915
New York, New York 10036
Telephone: (646) 767-2271
Facsimile: (212) 658-9177

25

brittany@lawicm.com

J. Gordon Rudd, Jr.
David M. Cialkowski
Alia M. Abdi
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
gordon.rudd@zimmreed.com
david.cialkowski@zimmreed.com
alia.abdi@zimmreed.com

*Attorneys for Plaintiff*